**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


**UNITED STATES OF AMERICA**            :

     **v.**            :    **CRIM. NO.   18-17 (TSC)**


**TIMOTHY L. JENNINGS, SR.**            :


**DEFENDANT'S SENTENCING MEMORANDUM**


  Mr. Jennings respectfully requests that the Court sentence him to a term of incarceration below the low end of the guidelines contemplated in the plea agreement (57-71 months) and recommend that he serve his period of incarceration at a BOP medical facility in light of his need for knee replacement surgery and potential need for a heart valve replacement or other cardiac surgery. In support of this request, Mr. Jennings submits the following information.

  When imposing a sentence, the Court must consider:

 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

 (2) the need for the sentence imposed -

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for [the applicable

offense and the applicable category of defendant as set forth in the United States

Sentencing Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is *not* an appropriate means of promoting correction and rehabilitation.

*See* 18 U.S.C. § 3582 (emphasis added).   With that limitation and considering all of the purposes of

sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to

comply with the purposes [of sentencing]."   18 U.S.C. § 3553(a) (emphasis added).

The PSR calculates Mr. Jennings's guidelines range in a manner that is dramatically

different from what the parties calculated in the plea agreement.   Moreover, even the range

indicated in the plea agreement exceeds the range necessary to comply with the purposes of

sentencing.   The plea agreement contemplated a total offense level of 21 and a criminal history

category IV, for a range of 57 to 71 months.   Importantly, the parties agreed that "a sentence

within the estimated guideline range would constitute a reasonable sentence in light of all of the

factors set forth in 18 U.S.C. § 3553(a)" but that Mr. Jennings reserved the right to seek a

sentence below that range.   (Plea ¶5; PSR ¶ 12).   This calculation included a two level increase

for "a threat of death" under 2B3.1(b)(2)(F).   And this increase was attributable because the

teller in one of the robberies recalls Mr. Jennings said "This is a robbery and I have a gun and I'll

shoot you."   Mr. Jennings acknowledged in the statement of offense that this is *what the teller*

*thought he said*, PSR ¶ 21, but it is inconsistent with his behavior on the other three robberies

where he made no such threats.   PSR ¶ 22-24.   He does not recall threatening to shoot anyone.

Thus, while he acknowledges that the two level increase applies under the agreement, the

resulting guideline range overstates his conduct. The primary benefit to Mr. Jennings of the early

plea in the case was that the government agreed not to charge the additional bank robberies.

However, the Probation Office has calculated the guidelines as if Mr. Jennings had in fact

pleaded guilty to all four robberies.   This calculation increased the offense level a full 4 levels,

to a range of 84 to 105 months.   Mr. Jennings urges the Court to give him the benefit of his plea

agreement by adopting the guideline range the parties contemplated in the plea agreement as the

starting point, especially since the plea agreement specifically says a sentence within that range

would be reasonable.

     Once the Court correctly calculates the sentence that the Guidelines recommend, the

Court must then "make an individualized assessment," considering the remaining factors set

forth in § 3553(a).   *Gall v. United States*, 552 U.S. 38, 50 (2007).   Because the Guidelines

merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve

§ 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized

sentence that actually does achieve § 3553(a)'s objectives in the case before it.   *Rita v. United*

*States*, 551 U.S. 338, 348, 350 (2007).   Consequently, this Court must "filter the Guidelines'

general advice through § 3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 128 S.Ct. at 598 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))).

Mr. Jennings submits that considering the §3553 factors, a sentence well below the guidelines, however they are calculated, would be appropriate. Those factors as applied to Mr. Jennings are discussed below.

**A.  The Nature and Circumstances of the Offense**

Mr. Jennings pleaded guilty to two bank robberies and admitted attempting to commit two other bank robberies. The first robbery occurred on July 17, 2017, and the other three robberies or attempted robberies all occurred on the same day – July 21, 2017. Mr. Jennings had no weapon, and while the teller at the first bank recalls feeling threatened, a fact that Mr. Jennings greatly regrets, Mr. Jennings does not recall making an overt threat.   And in fact, in the attempted robberies where he used a note, there was no threat.   He absolutely recognizes that his actions struck fear in the tellers who were merely doing their jobs, and he is very remorseful for that. Moreover, he acknowledges that he obtained $1,367 as a result of his conduct.   The offense is serious and that is accounted for by the offense level in the guidelines. Offsetting the serious of the offense is the fact that Mr. Jennings immediately admitted his criminal conduct and has expressed a desire to plead guilty and accept full responsibility for his actions from the moment he was charged in the case.

### B.  The History and Characteristics of the Defendant

Mr. Jennings is a 61 year old man with significant health problems.   He is a veteran who served his country and suffers from Post-Traumatic Stress Disorder.   Additionally, he suffers from an irregular heartbeat thought to be caused by a problem with his heart valves, coronary artery disease, high blood pressure, elevated cholesterol, diabetes, hepatitis, and sever knee pain caused by arthritis and deterioration of the cartilage. He is currently receiving cortisone shots and attending physical therapy three times weekly.   PSR ¶ 115-116.   As recently as last week, he was seen in urgent car and referred to a cardiologist because of heart problems.    PSR ¶ 116a. The Probation Office has verified these health issues and has identified his documented health issues as a factor that would warrant a variance from the applicable guideline range.   PSR ¶ 175. Mr. Jennings also has significant mental health problems, including bipolar disorder and PTSD. PSR ¶117-118.

Mr. Jennings does have a history that includes similar prior convictions but he also has a recent history of employment.   Mr. Jennings struggles with drug addiction and when he relapses, his addiction results in criminal behavior such as what occurred here.   He is currently on supervised release before Judge Walton for bank robberies that occurred in 2006.   While in custody on that case, Mr. Jennings took advantage of the programs offered by the institution and worked in the UNICOR program where he was given good work evaluations.   He also participated in the drug treatment programs offered by the BOP.   Upon his release, he tested clean and secured subsidized housing and employment through the Veterans Administration Medical Center.   Unfortunately, he relapsed in July 2017, and while using drugs, committed the bank robberies involved in this case. Thus, in addition to having his criminal history score

increased by two points in this case because he was on supervision when he committed these offenses, he faces an additional sentence of up to 24 months on his supervised release violation that resulted from this arrest.   Moreover, his criminal history category includes three points for a conviction of Unauthorized Use of An Automobile – an offense that occurred in 1996 – 23 years ago.   This conviction is scored by the Probation Office because he was apparently still on parole until September 21, 2002.   PSR ¶78.   But for being on parole, this conviction would have been too old to count.   And, it was within only 2 months of not counting at all.   This is further reason to vary from the resulting guideline calculation.

To his credit, Mr. Jennings immediately accepted responsibility for his actions in this case. While in custody, he has been working on the details and has been a positive force at the D.C. Jail.   He enrolled in the Residential Substance Abuse Treatment program at the jail and for the past several months has been a peer counselor in the program.

Mr. Jennings has demonstrated that when he is clean and sober, he is not a danger to the community.   In fact, friends and family have written in support of Mr. Jennings.   After his release in the case he has before Judge Walton, he was employed at the VA Medical Center through the Comprehensive Work Therapy Program where he was well liked and was offered a tentative full time position.   Mr. Jennings has written a heart-felt letter which is also attached to this pleading. (See attached letters).

### C.  The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense

While Mr. Jennings fully acknowledges the seriousness of the offense, the defense submits that a sentence below the guidelines, however they are calculated, would be sufficient to

promote respect for the law and provide just punishment.   The law is not respected when it results in sentences that are seen as overly harsh.   The mass over-incarceration of individuals, especially African American men, in this country has caused disrespect for the law.   A shorter term of incarceration is appropriate when offenses such as this are committed in large measure because of addiction to narcotics.   At 61 years of age, and with the serious medical conditions Mr. Jennings is facing, as well as the additional 24 months he is facing for revocation of his supervised release, a guideline sentence would exceed that necessary to provide just punishment.

### D.  The Need For The Sentence Imposed To Afford Adequate Deterrence To Criminal Conduct.

Studies have shown, time and again, that lengthy terms of incarceration do nothing to deter criminal conduct.   Rather, the certainty of being caught is "a vastly more effective deterrent than even draconian punishment." National Institute of Justice, Office of Justice Programs, *Five Things About Deterrence*, June 6, 2016, found at https://nij.gov/five-things/Pages/deterrence.aspx.   While prison serves the purpose of punishment quite well, it does not deter future crimes by others or even the charged individual once released. Nagin, Daniel S., "Deterrence in the Twenty-First Century," in Crime and Justice in America: 1975-2025, ed. M. Tonry, Chicago, Ill.: University of Chicago Press, 2013: 199-264. National Research Council. 2014. See also *The Growth of Incarceration in the United States: Exploring Causes and Consequences*. Washington, DC: The National Academies Press. https://doi.org/10.17226/18613.

### E. The Need For The Sentence Imposed To Protect The Public From Further Crimes Of The Defendant

While Mr. Jennings recognizes that incarceration protects the public from any further

crimes he may commit, this is neither a cost-effective or humane way to do so.   As discussed above, Mr. Jennings was on supervised release and, until he relapsed into drug use, was compliant and had become gainfully employed.   He needs sustained drug treatment to prevent further crimes.   At his age, and in his deteriorating health, he is far less likely to reoffend especially if he can get the necessary treatment for his addiction.   He has skills and is employable.   With proper supervision, he can return to society with a more limited risk of reoffending.

### F.  The Need For The Sentence Imposed To Provide The Defendant With Needed Educational Or Vocational Training, Medical Care, Or Other Correctional Treatment In The Most Effective Manner

As noted above, Mr. Jennings is in need of medical care and drug treatment, both of which can be provided in a much more effective and efficient manner outside of the Bureau of Prisons. During his term of incarceration, he will need to be housed at a medical facility as he is in need of knee replacement surgery and potentially cardiac surgery. Given his age and medical condition, a sentence of any significant duration will likely result in his serving the rest of his life in custody.

### G.  The Kinds of Sentences Available

As discussed above, a sentence below the guidelines is legally permissible and thus available to the Court.

### H.  The Need To Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty Of Similar Conduct

The statute does not prohibit all disparities in sentencings, only unwarranted disparities. For all of the reasons noted above, a sentence below the guidelines in this case would not be unwarranted.

8

**I.    The Need To Provide Restitution To Any Victims Of The Offense**.

Mr. Jennings will be required to pay restitution and fully intends to do so to the best of his ability.   The longer his period of incarceration, the less able to do so he will be.


Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

"/s/"
_____
MICHELLE PETERSON
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, DC   20004
(202) 208-7500